## Case No. 6,868.

Case of HUMPHREYS.

[Crabbe, 19.][1]

District Court, E. D. Pennsylvania. May 20, 1836.

BANKRUPTCY — DISCHARGE FROM IMPRISONMENT— ASSIGNMENT OF LEGACY—FRAUD— PROPERTY OATH.

A party imprisoned on process of this court petitioned for the benefit of the act of 6th January, 1800 (1 Story, Laws, 715 [2 Stat. 4]), and its various supplements: on investigation it appeared doubtful whether or not he had any property in a certain legacy, all his interest in which he had assigned for a small consideration; the court suggested to the party opposing the petition—being the same on whose suit the petitioner was imprisoned—that an assignment should be executed giving to him all the petitioner's remaining right to the legacy, which being refused by the opposing party, the court ordered such an assignment to be executed to the clerk of the court, in trust for the creditors generally, and the petitioner to be discharged on taking the prescribed oath.

This was a petition of a party imprisoned on process issued from this court, praying for the benefit of the act of 6th January, 1800 (1 Story, Laws, 715 [2 Stat. 4]), and its various supplements. It appeared that, before the commencement of the suit on which he was then imprisoned, and before the debt on which it was founded had accrued, the petitioner [Richard Humphreys] had been discharged under the insolvent laws of the state of Pennsylvania; afterwards, and after the accruing of the debt sued on in this court, but before suit begun, a legacy expectant on the death of a third party was devised to the petitioner; he assigned all his interest in this legacy for a sum much less than its estimated value, and was afterwards sued and imprisoned by the party opposing the present petition. It having been suggested that the petitioner could not safely make the oath required by the act of congress, it being doubtful whether the assignment of the legacy would be held, in equity, to pass more than the value of the consideration on which it was made, the court proposed to the opposing creditor that he should take from the petitioner an assignment of any remaining interest he might have in the legacy, which the creditor refused to do.

HOPKINSON, District Judge. The petitioner was discharged on the 8th of September, 1831, under the insolvent law of the state of Pennsylvania, and returned no property but a few debts, amounting in all to $457.84. In February, 1832, R. Humphreys, the grandfather of the petitioner, died, leaving him one-eighth part of his property not particularly devised, which, the petitioner says, the executors have informed him, will entitle him to about five or six thousand dollars. This legacy is given after the death of the widow of the testator, who is now seventy-seven years old. On the 1st April, 1833, the petitioner made a complete transfer to Robert M. Lee, for the sum of two thousand dollars, of all his right and interest in his grandfather's estate. This consideration of two thousand dollars is said and sworn by the petitioner and by Mr. Lee to be for boarding and moneys advanced to the petitioner at various times, for which his bonds were given, and destroyed when the transfer was made. No property is shown or alleged to be held by the petitioner, other than that he may be entitled to under the will of his grandfather. The question then is, whether I am so satisfied that the petitioner has absolutely divested himself of all his right and interest in his grandfather's estate, by the transfer to Mr. Lee, that I can permit or direct him to take the oath prescribed by the act of congress? Until the death of his grandmother, the petitioner can claim nothing of this estate, and it is said that his right is contingent on his surviving his grandmother. Granting this to be so, what is the contingency that an old lady of seventy-seven years of age will survive a healthy young man of two or three and twenty? Suppose the petitioner shall survive his grandmother; the question then occurs whether Mr. Lee can, in equity, claim more by this assignment than his debt and interest; and supposing that debt shall be established to be the sum mentioned of two thousand dollars, there will be a large surplus in his hands beyond his debt. This was a young, and, evidently, a thoughtless and imprudent young man; a pupil with Mr. Lee at the time this assignment was made. Will not equity decree Mr. Lee to be a trustee for the petitioner for all beyond his debt and interest? I give no opinion on this question, either for or against the validity of this assignment, or for what amount it may be valid and effectual. It is enough for my purpose that I am not clear that this assignment has passed, irrevocably, to Mr. Lee, all the interest of the petitioner in his grandfather's estate.

In this situation of the affair, what can I do to administer the law justly between these parties? Is the petitioner to remain in prison until this question can be tried and decided, which may not be for several years? Or can I administer the oath to him while I doubt its truth; and discharge him when he may hereafter receive a property fully sufficient to pay his debts, or, at least, much more than the plaintiff's claim, on which he is imprisoned? Under these circumstances, I suggested to the parties that the petitioner should make an assignment, to the opposing creditor, of whatever

---

[1] [Reported by William H. Crabbe, Esq.]

interest or estate he may have in the property devised to him by his grandfather. If this were done, then the petitioner might safely take the oath required by the law, and swear that he has no property, &c.; because, if his assignment to Mr. Lee is good and valid, then his whole interest in that estate is gone from him; but if any right or interest remains in him, notwithstanding that assignment, then it would be passed by the transfer I suggested. This proposition is refused by the opposing creditor, at whose suit the petitioner is now imprisoned. But the refusal ought not to prevent me from doing justice in the case, if I can come to it in another way. If the assignment to Mr. Lee appeared to be fraudulent in fact, or in the intention of the petitioner, I should not hesitate to remand him to prison, and refuse him the benefit of the act of congress. But the willingness of the petitioner to execute the assignment suggested, is evidence of fair intention on his part, although the law may give him, or his creditors, the right to call Mr. Lee to account for all he receives beyond the payment of his debt. If the petitioner had no creditors interested in the property, I might leave him to his own will, and his own remedy in this affair. But others are concerned, and I know not how they could try their right, if they should wish to do so, but in the manner I have suggested—that is, under an assignment from the petitioner. It is only thus that any creditor can call Mr. Lee to account. Let the petitioner make an assignment of all his interest in his grandfather's estate, to the clerk of the court, in trust for the creditors generally, as it has been refused by the opposing creditor; and, on taking the oath prescribed by the act of congress, let the petitioner be discharged.